**WALTON et al. v. WOOLWORTH et al.**

No. 6444.

Court of Civil Appeals of Texas.
Texarkana.

May 26, 1949.

Rehearing Denied June 16, 1949.

J. N. Saye, Longview, for appellants.

Smith & Smith, Gist & Wilson, Tyler, J. T. Harris, Longview, Abney, Abney & Baldwin, Marshall, Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, Jack E. Price, Longview, for appellees.

WILLIAMS, Justice.

Edmond Walton and those claiming under him appeal from a judgment which denied them a recovery in this trespass to try title action prosecuted against appellees Ola L. Woolworth, the widow of J. G. Woolworth, and those claiming under him or his heirs, the defendants below.

The sixty-five acre tract in controversy is out of a 160 acre survey in Panola County, Texas, patented in 1875 to Whitney Walton. His son, Alex Walton, resided upon and cultivated parts of it from the time of Whitney's death until Alex's death in 1920. It appears that Alex after the death of his father conveyed off certain acreage leaving the part in controversy. Alex, a bachelor, died intestate. Edmond Walton, who carried the family name of "Walton," does not claim to be a legitimate heir of Alex or Whitney. Edmond was living in a two-room house on this tract at Alex's death and after his death moved into the small house that Alex had occupied. During a period of some years prior to 1920, up to October 10, 1945, the date this suit was filed, Edmond continuously occupied and used the tract as his home, cultivating some portion each year during the period. Edmond, now a man late in years, has reared a large family on the place.

His claim to title under the ten year statute of limitation, Art. 5510, R.C.S. of Texas, is based upon above use and occupancy. It was further his contention that he had claimed the tract as his own through the years. It was appellees' position in the trial below, which the trial court sustained, that Edmond's possession commenced with permission of Alex Walton, appellees' predecessor in title, and so continued in recognition of such title during that prescriptive period of time above mentioned.

In addition to the facts hereinabove detailed the court further found that the 65 acre tract of land was conveyed to J. G. Woolworth by deed dated October 13, 1923, filed for record December 18, 1924, from one William Roberts, administrator of the estate of Alex Walton, deceased. No attack is made upon the regularity of the appointment of such administrator; of the fact that he duly qualified, or of the regularity of the probate orders authorizing such sale. The court found that Edmond

with permission of Alex was living on the land and cultivating a part of it at the time of the death of Alex; and that Edmond did not repudiate the title of Alex during the latter's lifetime, nor of the administrator after his death, nor of J. G. Woolworth, or of those claiming under J. G. Woolworth, until about a year before this suit was filed. The trial court further found that Edmond acknowledged the Woolworths' ownership of the land after the latter's purchase; that he occupied same as a tenant of Woolworth from 1923 until his death in June, 1936; that the Woolworths did not know that Edmond was claiming the land and there was no fact or circumstances to put them on notice that he was claiming the land, if he was doing so.

■ Edmond having entered upon the land with permission of Alex, this being undisputed, it was incumbent upon Edmond to have visited the owners with notice of his repudiation of his recognition of the true owners' title and his adverse claim to the land for the prescriptive period of time to ripen such asserted ten year statute of limitation claim. Federal Land Bank v. King, Tex.Com.App., 122 S.W.2d 1061; Pearson v. Doherty, 143 Tex. 64, 183 S.W. 2d 453. Appellants make no issue on above statement of law, but under their various points attack the sufficiency of the evidence to support the trial court's findings of fact upon which above rule of law was applied.

The tract was situated on the edge of the Sabine River bottoms and very little value was attached to the place until the gas field in the area was discovered. The original meager improvements have gradually deteriorated through the years and the place has been badly neglected by all litigants. Much of the evidence dealing with the acts and conduct of the litigants with respect to the farm is vague, uncertain and sketchy. Evidence introduced which the trial court gave credence to reflects that Edmond borrowed money from Mr. Woolworth each spring to make a crop from the time Woolworth acquired the land under the administrator's deed in 1923, until his death in 1936. Edmond denies he had any such business deals after 1930. Other testimony introduced is to the effect that Woolworth told Edmond sometime prior to 1931 or 1932, "he could stay there as long as he lived, just pay him a little rent along"; in 1936, Woolworth told Edmond he would have to pay some rent that year or get off; that Edmond told him he would; that in 1939, a member of the family told Edmond he had not paid any rent since Mr. Woolworth died and Edmond promised he would pay some for that year. According to other witnesses, Edmond told them in 1931 or 1932, and as late as 1940, that he was living on the Woolworth place or that the place belonged to the Woolworths, or that their permission was necessary before he could cut and sell some fire wood off the place. These statements were all denied by Edmond. He offered one witness who claims that he informed Mr. Woolworth, in 1931, that Edmond was claiming the place.

Edmond has never paid any taxes on the tract, rendering it for taxes for the first time in 1941. This lends no support to his asserted claim through the years. The tract went unrendered in the Whiting Walton Survey during the years 1926 to 1943, both inclusive. Woolworth rendered and paid the taxes for the years 1924 and 1925. In the succeeding years the tract was assessed to Woolworth in the Alexander Walton Survey, and taxes so assessed were paid by him before delinquency.. After the controversy arose the tax collector canceled the delinquent taxes on 65 acres in Whiting Walton Survey on the ground that the taxes had been paid by the Woolworths on the wrong tract.

■■ Without comment or observation as to the weight the trial court may have given to the testimony of the various witnesses, or the reasons that may be attributed to his belief in some and the rejection of other testimony, the evidence certainly presented issues of fact. The trial court's findings rest upon evidence in irreconcilable conflict and if the findings had been favorable to appellants same would have rested upon the same character of evidence. This being so, and being governed by the applicable and well-known rule as stated in

Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585, 587; Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231, the evidence would not warrant this reviewing court to disturb the trial court's findings of fact, where as here "there is some evidence to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him." Glenn v. Glenn, supra.

The judgment of the trial court is affirmed.